UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| TYESE B.[1], | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL NO. 3:21cv262 |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(d), and for Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. §1382c(a)(3). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act

through December 31, 2019.

2. The claimant has not engaged in substantial gainful activity since September 22, 2017, the amended alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: undifferentiated connective tissue disease; morbid obesity; fibromyalgia; osteoarthritis; smoldering multiple myeloma; asthma; obstructive sleep apnea (OSA); diabetes mellitus; depression; generalized anxiety disorder; and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant can never climb ladders, ropes, or scaffolds. The claimant is limited to frequent handling and fingering with the bilateral upper extremities. The claimant is limited to occasional exposure to extreme temperatures, wetness, humidity, fumes, odors, dusts, and gases. The claimant can have no exposure to unprotected heights or dangerous moving machinery. The claimant can understand, remember, and carry out simple instructions and make simple work-related decisions. The claimant can tolerate occasional changes in work setting. The claimant can tolerate occasional interaction with coworkers and supervisors, and no interaction with the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 23, 1976 and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding

> that the claimant is “not disabled,” whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant’s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from September 22, 2017, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-26).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on January 19, 2022. On March 2, 2022 the defendant filed a memorandum in support of the Commissioner’s decision to which Plaintiff replied on March 17, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner’s decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not

disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

In support of remand, Plaintiff argues that the ALJ failed to properly evaluate the opinion of her treating provider, Dr. Del Pilar. Dr. Del Pilar opined Plaintiff could walk less than one block without rest or severe pain; she could sit or stand for ten minutes at a time; she could sit, stand, or walk, for a total of less than two hours each per eight-hour workday; and she would require the option to shift from sitting, standing, or walking at will. (Tr. 2400). Dr. Del Pilar then opined Plaintiff would require a frequent amount of rest periods of unpredictable length due to her muscle weakness, chronic fatigue, pain, and numbness. (Tr. 2400). Dr. Del Pilar also opined Plaintiff could never lift any amount of weight, twist, stoop, crouch, or climb ladders and stairs; she could rarely use her hands to grasp, turn, or twist; she could never use her hands for fine manipulation; and she could occasionally reach in front of her body bilaterally, but never overhead. (Tr. 2401-03). Finally, Dr. Del Pilar opined Plaintiff was incapable of even low stress work; would be absent from work more than four days per month; and would be off task for twenty-five percent of the workday. (Tr. 2403-04).

Plaintiff argues that the ALJ's reasoning lacked sufficient explanation to justify her rejection of Dr. Del Pilar's opinion. After extensively discussing the medical record (Tr. 23-25), the ALJ stated:

> Additionally, Dr. Del Pilar provided a disabling medical source statement in which he limited the claimant to less than sedentary work and indicated she would miss

> more than four days of work per month. (Exhibit B30F). The undersigned finds this opinion unpersuasive, as it is internally inconsistent with the doctor's own records as well as inconsistent with the longitudinal record that shows overall stable/controlled impairments.

(Tr. 25).

Although Plaintiff claims that the ALJ failed to support her finding that Dr. Del Pilar's opinion was inconsistent and unsupported, the ALJ discussed treatment evidence from Dr. Del Pilar throughout the decision that is inconsistent with his opinion. For example, the ALJ cited Dr. Del Pilar's treatment notes in discussing that Plaintiff's asthma appeared to be controlled, noting that there were no reports of complications or exacerbations and she was noted to have had only a mild interference with normal activities. (Tr. 22-23, 922). The ALJ discussed that Plaintiff's diabetes appeared to be well controlled, with no reports of associated symptoms or complications, and cited Dr. Del Pilar's treatment notes. (Tr. 23, 922). In evaluating Plaintiff's osteoarthritis, the ALJ considered that Plaintiff had improvement (up to 80% overall) with physical therapy, and cited Dr. Del Pilar's treatment notes. (Tr. 23, 1604). The ALJ considered that while some examinations noted reduced range of motion in the neck and trigger points at multiple joints, these appear to be isolated, as the majority of the exams noted normal findings and intact functioning, citing Dr. Del Pilar's treatment notes. (Tr. 23, 1593-1895). In evaluating Plaintiff's mental impairments, the ALJ noted that while Plaintiff was observed at times to appear sad/dysthymic, treatment records largely cited overall normal and intact mental status examinations, with no reports of observations or concerns related to her functional abilities, and the ALJ cited Dr. Del Pilar's treatment notes. (Tr. 23, 924, 933, 1593-1895). Accordingly, the ALJ properly considered Dr. Del Pilar's treatment notes that were inconsistent with his opinion.

Moreover, the ALJ cited evidence throughout the decision that is inconsistent with Dr. Del Pilar's opinion. For example, the ALJ considered that while Plaintiff had a diagnosis of smoldering multiple myeloma, she did not receive any treatment and was regularly monitored every three months, and her labs were essentially unchanged, her body systems remained unaffected, and there was a low risk of cytogenetics. (Tr. 22, 780-810, 826-64, 879-97, 992-1007). The ALJ discussed that Plaintiff's sleep apnea improved with the use of CPAP. (Tr. 22, 643-72, 1012-42). The ALJ noted that while Plaintiff reported blurred vision, regular vision exams showed her vision was essentially intact with no retinopathy. (Tr. 23, 1008-11, 1512). The ALJ discussed Plaintiff's diagnosis of osteoarthritis, and noted that imaging showed only mild/minimal multilevel degenerative changes. (Tr. 23, 581, 816, 822). Plaintiff was not prescribed medication for this impairment, and records show an improvement (up to 80% overall) with physical therapy. (Tr. 23, 594, 598, 613, 617, 621, 625, 635).

On consultative examination, there was no spinous or paraspinal tenderness in the lumbar and cervical region, she had pain in the right shoulder, and difficulty stooping/squatting and walking heel to toe tandemly. (Tr. 23, 874). However, she had a full range of motion and strength in the spine and throughout the upper and lower extremities, grip strength was 5/5 bilaterally with good/intact manipulative abilities, and she had a normal gait. (Tr. 23, 874). The ALJ considered that while some examinations noted a reduced range of motion in the neck and trigger points at multiple joints, these appear to be isolated as the majority of exams revealed normal findings and intact functioning. (Tr. 23, 545, 584-85, 685-779, 873-75, 904-07, 1202-1415, 1479, 1483, 1489, 1493, 1497).

The ALJ also considered the treatment evidence related to Plaintiff's mental impairments,

and noted that Plaintiff attended therapy for depression, anxiety, and PTSD. (Tr. 23, 680-779, 1202-1344). Plaintiff underwent a consultative examination, but due to poor/inconsistent effort and the inability to establish rapport, findings were unable to offer true/adequate functioning levels. (Tr. 23, 870). The ALJ discussed that the record showed significant improvement with cognitive behavioral therapy. (Tr. 23). Plaintiff reported that she was doing better, getting out and exercising more, working on crafts, and volunteering at her church. (Tr. 23, 685-779, 1202-1344). While she was observed at times to appear sad/dysthymic, treatment records largely cited overall normal and intact mental status examinations, with no reports of observations or concerns related to her functional abilities. (Tr. 23, 545, 584-85, 680-779, 904-07, 1202-1415, 1479, 1483, 1489, 1493, 1497).

Plaintiff further contends that by labeling her impairments as stable, the ALJ was simply stating that they were unchanged, which does not equate to non-disabling. However, while the ALJ noted that Plaintiff's impairments were stable and controlled in some instances, the ALJ explained this finding with a discussion of the relevant treatment evidence, which essentially revealed normal findings. For example, the ALJ explained that Plaintiff's smoldering multiple myeloma was stable/controlled, noting that she was regularly monitored every three months and while under such observation, her labs remained unchanged, her body systems remained unaffected, and there was a low risk for cyteogenetics (Tr. 22, 780-810, 826- 64, 879-97, 992-1007). In noting that Plaintiff's asthma was controlled, the ALJ explained that there were no reports of complications or exacerbations, and it was noted to have only a mild interference with normal activities (Tr. 22-23, 922). In noting that diabetes was controlled, the ALJ explained that there were no reports of associated symptoms or complications (Tr. 23, 922). The ALJ discussed

that Plaintiff reported blurry vision, but her vision exams revealed intact vision with no retinopathy. (Tr. 23, 1008-11, 1512). In discussing osteoarthritis, the ALJ explained that Plaintiff had up to 80% overall improvement with physical therapy, and noted that Plaintiff had full range of motion and strength in the spine and upper and lower extremities, full grip strength, normal gait, and that the majority of examinations noted normal findings and intact functioning. (Tr. 23, 545, 584-85, 594, 598, 613, 617, 621, 625, 635, 685-779, 873-75, 904-07, 1202-1415, 1479, 1483, 1489, 1493, 1497, 1604, 1593-1895).

The ALJ explained that Plaintiff received minimal treatment for her mental impairments, and that the records revealed significant improvement with cognitive behavioral therapy. (Tr. 23). The ALJ explained that treatment records were largely normal overall with intact mental status examinations and no reports of observations or concerns related to her functional abilities. (Tr. 23, 545, 584-85, 680-779, 904-07, 924, 933, 1202-1415, 1479, 1483, 1489, 1493, 1497, 1593-1895). Thus, while the ALJ noted generally that Plaintiff's impairments were stable or controlled, she also discussed the relevant treatment evidence that showed essentially normal examination findings.

Plaintiff cites evidence from Dr. Del Pilar and other treatment providers, arguing that this evidence supports and is consistent with Dr. Del Pilar's opinion. However, as discussed above, the ALJ properly considered both positive and negative examination findings in evaluating the relevant treatment evidence. In light of the substantial evidence cited by the ALJ, the Court declines Plaintiff's invitation to reweigh the evidence. *Powers*, 207 F.3d at 434-35 (the Court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for the ALJ). To the extent that the ALJ may not have mentioned every objective finding in the record, it is well-

established that the ALJ "need not provide a 'complete written evaluation of every piece of testimony and evidence.'" *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Diaz*, 55 F.3d at 308).

Plaintiff contends that had the ALJ properly evaluated Dr. Del Pilar's opinion, she would have been precluded from work under the vocational expert's testimony and that she would have been unable to meet the demands of sedentary work. However, as discussed above, substantial evidence supports the ALJ's evaluation of Dr. Del Pilar's opinion. Furthermore, the ALJ was "not required to rely entirely on a particular physician's opinion or choose between the opinions any of the claimant's physicians" in making her RFC determination. *Schmid*t, 496 F.3d 833 at 845; *Diaz*, 55 F.3d at 306 n.2. Although the ALJ must give consideration to the opinions of medical sources in evaluating whether a claimant is disabled, the final responsibility for deciding a claimant's specific work-related or RFC limitations is reserved to the Agency. *See Diaz*, 55 F.3d at 306, n.2.

As noted above, the ALJ found that Plaintiff was capable of sedentary work, except she could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; she could never climb ladders, ropes, or scaffolds; she was limited to frequent handling and fingering with the bilateral upper extremities; she was limited to occasional exposure to extreme temperatures, wetness, humidity, fumes, odors, dusts, and gases; she could have no exposure to unprotected heights or dangerous moving machinery; she could understand, remember, and carry out simple instructions and make simple work-related decisions; and she could tolerate occasional changes in work setting and occasional interaction with coworkers and supervisors, and no interaction with the public. (Tr. 21).

In reaching this finding, the ALJ considered the treatment records related to Plaintiff's physical and mental impairments discussed above, as well as Dr. Del Pilar's opinion. The ALJ also considered and found unpersuasive the State agency medical and psychological consultant opinions, which indicated that Plaintiff did not have a severe physical impairment and that she was capable of detailed, but not complex tasks and could relate on a superficial and ongoing basis with co-workers and supervisors. (Tr. 24, 102-05, 113-17, 128-32, 141-45).

The ALJ also considered Plaintiff's testimony and subjective complaints. (Tr. 22-24). The ALJ discussed that Plaintiff received routine and conservative treatment for her physical impairments, and that she reported improvement with treatments. (Tr. 23-24). The ALJ explained that she considered Plaintiff's ongoing complaints of fatigue, and the documentation of pain, tenderness, and instances of decreased mobility and that such complaints were accommodated in the sedentary RFC finding. (Tr. 23-24). The ALJ noted that there was minimal mention in the record and hearing testimony of significant deficits attributed to Plaintiff's mental health struggles, but that based on Plaintiff's statements made in her Function Report as well as those provided during her consultative examination, the ALJ provided mental limitations in the RFC finding. (Tr. 24).

Clearly, the ALJ provided substantial evidence to support the RFC finding. The ALJ translated her RFC finding into a hypothetical question, which mirrored her RFC determination. (Tr. 21, 63-64). Contrary to Plaintiff's contention, the ALJ's RFC finding and hypothetical question to the vocational expert incorporated all of Plaintiff's limitations supported by the medical evidence of record. *See Meredith v. Bowen*, 833 F.2d 650, 654 (7th Cir. 1987) (all that is required is that the hypothetical question be supported by the medical evidence in the record).

Accordingly, there is no basis for remand and the decision will be affirmed.

Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: March 21, 2022.

s/ William C. Lee
William C. Lee, Judge
United States District Court